# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JENNY RYDER, as successor in interest to ANGELINE KOSTMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> I.C. SYSTEM, INC., <br><br> Defendant. | Case No.: 19-cv-1458 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jenny Ryder ("Ryder") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff's mother, Angeline Kostman ("Kostman"), passed away on February 19, 2019.

5. Ryder is the representative of the Estate of Angeline Kostman (the "Estate"). Ryder is authorized to review any bills, invoices, and other financial correspondence on behalf of the Estate.

6. Angeline Kostman was a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes, namely a store-brand revolving credit account that was used only for personal, family, or household purposes.

7. Angeline Kostman was also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from her was incurred as a result of a consumer transaction.

8. Ryder brings these claims in her individual capacity and as the representative of the Estate. Plaintiff has standing to bring these claims in her individual capacity by virtue of her "special relationship" with her mother. *See, O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011) (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1997); *see also, Hill v. Woods*, 2017 U.S. Dist. LEXIS 18413, *15 (S.D. Ind. February 9, 2017) (noting that a POA would have standing to bring FDCPA claims); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 1000-1001 (E.D. Wis. 2013) (holding a husband had standing to bring FDCPA claims after having read a letter addressed to his wife because "the plain language of 15 U.S.C. § 1692e is not limited in scope to debtors; rather, it prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'"); *Swearingen v. Portfolio Recovery Assocs.*, 892 F. Supp. 2d 987 (N.D. Ill. 2012); *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313, at *7-8 (N.D. Ill. Mar. 19, 1997).

9. Ryder also has standing to bring these claims as a representative of the Estate because the relief sought is remedial and not penal in nature. *See, United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993); *Carter v. First Nat'l Collection Bureau, Inc.*, No. 15-cv-1695,

2017 U.S. Dist. LEXIS 190164, at *5 n.3 (S.D. Tex. Nov. 16, 2017); *see also Dickens v. GC Servs.*, 2018 U.S. Dist. LEXIS 173071 (M.D. Fla. Oct. 2, 2018).

10. Defendant I.C. System, Inc. ("ICS") is a debt collection agency with its principal offices located at 444 Highway 96 East, P.O. Box 64444, St. Paul, Minnesota 55164.

11. ICS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

12. ICS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

13. ICS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

14. Sometime before January 18, 2019, Kostman entered into an open-end or revolving credit arrangement with "Birchland Market," a retailer that of good and gift items, including "delicious dairy cheeses, fabulous smokehouse meats, and delicious desserts." *See* https://www.birchlandmarket.com/about-us; https://www.birchlandmarket.com/credit-terms.

15. On or about January 18, 2019, Birchland Market mailed an account statement to Kostman regarding an alleged debt, associated with Kostman's "Birchland Market" revolving credit account. A copy of this account statement is attached to this complaint as Exhibit A.

16. Upon information and belief, the debt referenced in Exhibit A is a personal consumer credit account, used only for personal, family, and household purposes.

3

17. <u>Exhibit A</u> includes the following representations

```
CUSTOMER STATEMENT
Account Number          ████0372-E2
New Balance             $228.56
Payment Due Date        02/15/2019
Minimum Payment Due     $159.92
```

18. <u>Exhibit A</u> also includes the following representations

| PREVIOUS BALANCE | PAYMENTS | SUBTRACT OTHER CREDITS | INTEREST CHARGED | ADD FEES CHARGED | ADD PURCHASES/ BALANCE TRANSFERS | NEW BALANCE |
|---|---|---|---|---|---|---|
| 211.18 | 0.00 | 0.00 | 2.38 | 15.00 | 0.00 | $228.56 |
| NO. OF DAYS IN BILLING PERIOD | AVERAGE DAILY BALANCE | | | CLOSING DATE | PAST DUE AMOUNT | MINIMUM PAYMENT DUE |
| 30 | 119.35 | | | 01/18/2019 | 139.93 | $159.92 |

19. <u>Exhibit A</u> states that, as of January 18, 2019, the account had a "New Balance" of $228.56, a "Past Due Amount" of $139.93, a "Payment Due Date" of February 15, 2019, and a "Minimum Payment Due" of $159.92.

20. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in <u>Exhibit A</u> provided for *optional* acceleration upon the consumer's default. *See, e.g.*, https://www.birchlandmarket.com/credit-terms ("Birchland Credit Terms Effective January 3, 2018") ("**DEFAULT**. If you fail to pay the Minimum Monthly Payment when due, or upon your default if otherwise defined under Applicable Law … [we] will have … after giving you any notice and opportunity to cure the default required by Applicable Law … the right to declare your account immediately due and payable.").

21. <u>Exhibit A</u> states that the creditor has declared the account past due but does not state that the consumer must pay the unpaid balance immediately. Instead, <u>Exhibit A</u> states that the consumer can avoid acceleration and return the account to a current status by tendering the minimum payment amount on or before February 15, 2019, the payment due date.

4

22.     Exhibit A states that Birchland Market would not exercise its rights under the optional acceleration clause until, at the earliest, February 15, 2019 and that Kostman could avoid having the account accelerated and declared immediately due and payable by tendering the Minimum Monthly Payment on or before February 15, 2019.

23.     On or about February 5, 2019, Defendant mailed Kostman a debt collection letter regarding the same alleged debt, allegedly owed to "Birchland Market."  A copy of this letter is attached to this complaint as Exhibit B.

24.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Kostman inserted by computer.

25.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Defendant to attempt to collect alleged debts.

26.     Upon information and belief, Exhibit B was the first letter that Defendant mailed to Kostman with respect to the alleged debt referenced in Exhibit B.

27.     Exhibit B contains a "NOTICE" that largely reflects the statutorily required disclosures that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the consumer along with, or within five days of, their initial communications:

> NOTICE
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

5

Case 2:19-cv-01458-NJ    Filed 10/04/19    Page 5 of 17    Document 1

28. Exhibit B also contains the following account information:

```
ACCOUNT SUMMARY
Creditor: Birchland Market
Account No:         0372     E2A
I.C. System Reference No:    4484-1-49

Principal Due:                    $119.35
Finance Charges Due:               $19.21
Late Charge Due:                  $105.00
BALANCE DUE:                      $243.56

$0.00 has been paid since placement
```

29. Exhibit B, mailed on February 5, 2019 --- more than a week before the "Payment Due Date" stated in Exhibit A --- states the "**BALANCE DUE**" as of February 5, 2019 is $243.56.

30. Exhibit B makes no reference whatsoever to any minimum payment amount that Plaintiff could pay to return the account to a current status.

31. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

32. The representation in Exhibit B that Kostman's account had a "**BALANCE DUE**" of $243.56 as of February 5, 2019 is false, deceptive, misleading, and unconscionable. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

33. According to Exhibit A, as of February 5, 2019, when Defendant mailed Exhibit B, Kostman's account had a "Past Due Amount" of $139.93, a "Minimum Payment Due" of $159.92, and a "Payment Due Date" of February 15, 2019. Exhibit A.

34. By mailing the January 18, 2019 account statement, Birchland Market waived its right to accelerate the maturity of the account before February 15, 2019, and as of February 5, 2019, when Defendant mailed its letter, Birchland Market had not exercised the optional

6

acceleration clause, notwithstanding whether Birchland Market had closed or charged off the account for accounting purposes. *See, e.g., Johnson v. LVNV Funding*, No. 13-cv-1191, 2016 U.S. Dist. LEXIS 19651, at *15 (E.D. Wis. Feb. 18, 2016) ("That WaMu chose to write off the debt does not mean that it could improperly accelerate it."); *see also Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160-61 (Ind. Ct. App. 2010) (in the context of credit card accounts, "a 'charge off' appears to be an accounting device that has no bearing upon the question of whether an optional acceleration clause has been invoked.").

35. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "**BALANCE DUE**" as of February 5, 2019 is $243.56 while Exhibit A states that only the minimum payment ($159.92) is due, and that only a portion of the minimum payment ($139.93) is past due. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that a portion of that balance "might not yet be due, let alone overdue."); *Barnes v. Advanced Call Ctr. Techs, LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)"); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("What [the debt collector] certainly could do was to state the total amount **due** --- interest and other charges as well as principal --- on the date the dunning letter was sent. We think the statute required this.").

36. Upon information and belief, Kostman read Exhibits A & B.

37. Upon Kostman's death, her assisted living facility forwarded her mail to Ryder.

38. Ryder read Exhibits A & B.

39. Ryder was misled and confused by Exhibit B.

40. The unsophisticated consumer would be misled and confused by Exhibit B.

### *The FDCPA*

41. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*,

2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016);

*Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

44. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

49. 15 U.S.C. § 1692g(a) states:

> **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

50. The debt collector must state the amount of the debt in a non-confusing manner. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016) (citing *Chuway*,

11

362 F.3d at 947); *see also, Ozier v. Rev-1 Sols., LLC*, No. 17-cv-118, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017) ("The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed.") (citing 15 U.S.C. § 1692e).

### *The WCA*

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

60. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

13

61. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

62. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. Prior to sending Exhibits B, Defendant knew or should have known the creditor had sent account statements the represented the consumer could return the account to a current status by tendering the minimum payments on or before the payment due date.

65. Prior to sending Exhibits B, Defendant knew or should have known that Birchland Market had not accelerated the balance of the account.

66. Defendant falsely represented that the accounts had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

67. Defendant misrepresented the amount, character, and legal status of the debt it was collecting.

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

14

70. Prior to sending Exhibits B, Defendant knew or should have known the creditor had sent account statements the represented the consumer could return the account to a current status by tendering the minimum payments on or before the payment due date.

71. Prior to sending Exhibits B, Defendant knew or should have known that Birchland Market had not accelerated the balance of the account.

72. Defendant falsely represented that the accounts had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

73. Defendant misrepresented the amount, character, and legal status of the debt it was collecting.

74. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## **CLASS ALLEGATIONS**

75. Plaintiff brings this action on behalf of two Classes.

76. Class I ("Wisconsin Class"), consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an account statement by Birchland Market in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed prior to the "Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family, or household purposes, (f) and the letter in the form of Exhibit B was mailed between October 4, 2018 and October 4, 2019, inclusive, (g) and was not returned by the postal service.

77. Class II ("Nationwide Class"), consists of (a) all natural persons in the United States, (b) who were sent an account statement by Birchland Market in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in

15

the form of Exhibit B was mailed prior to the "Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between October 4, 2018 and October 4, 2019, inclusive, (g) and was not returned by the postal service.

78. Each Class is so numerous that joinder is impracticable.

79. Upon information and belief, there are more than 50 members of each Class.

80. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B violates the FDCPA and/or the WCA.

81. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

82. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 4, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com